E-FILED
Tuesday, 15 September, 2009  02:27:50 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SHARON MURRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  08-3159 |
| | ) | |
| AT&T MOBILITY LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on the following motions filed by pro se Plaintiff Sharon Murray: Motion for Summary Judgment (d/e 26) and accompanying Motion for Awards (d/e 27), Motion for Protection Order (d/e 65), and Motion Seeking Sanctions and Federal Penalty for Perjury Motion for Ruling on the Plaintiff's Motion for Summary Judgment (d/e 67) (Motion for Sanctions).  Also pending is a Motion for Summary Judgment (d/e 48) filed by Defendant AT&T Mobility LLC (AT&T).  Murray is a former employee of AT&T.  After her employment was terminated, she filed a Complaint (d/e 8) alleging violations of the Family Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA), as well as claims

of interference with her Illinois workers' compensation claim, harassment, and retaliation. FMLA, 29 U.S.C.A. § 2601 et seq.; ADA, 42 U.S.C. § 12101 et seq. For the reasons set forth below, Murray's Motion for Summary Judgment, Motion for Awards, Motion for Protection Order, and Motion for Sanctions are denied, and Defendant's Motion for Summary Judgment is allowed, in part. Summary judgment is entered in favor of AT&T on Murray's FMLA and ADA claims. The Court declines to exercise supplemental jurisdiction over Murray's state law claims, and thus, the remaining state law claims are dismissed for lack of jurisdiction.

## BACKGROUND

Murray began working for AT&T in November 2003 as a customer service representative in AT&T's Springfield, Illinois Call Center. Murray's job duties included assisting customers, correcting billing, filing cases, and diagnosing issues, among other things. Employees in the Springfield Call Center worked staggered shifts, which were assigned based on a seniority-based bidding process pursuant to a Collective Bargaining Agreement (CBA). In January 2008, Murray's regular shift was 6:30 a.m. to 3:30 p.m.

From November 4, 2007, to February 4, 2008, Murray reported to

Floor Manager Candee Arvin.[1]   From February 4, 2008, until her employment was terminated, Murray reported to Floor Manager Susan Phares.  Phares previously supervised Murray and other members of Arvin's team when Arvin was absent from work.  Both Phares and Arvin reported to Area Manager Michael Woodfall.  Gaye Ann Pusch has served as the Call Center Absences Manager for the Springfield Call Center since July 2005.  However, Pusch was absent from work from November 6, 2007, until January 28, 2008, during which time David Simmons filled in as the Call Center Absences Manager.

During Murray's employment, AT&T maintained Attendance Guidelines for employees.  <u>Defendant's Motion for Summary Judgment</u>, Ex. B, <u>Declaration of Gaye Ann Pusch (Pusch Dec.)</u>, ¶ 3 & Ex. 1, <u>Cingular Wireless Consumer Customer Services Attendance Guidelines</u>.  According to AT&T, unscheduled absences, late arrivals, and early departures have severe adverse consequences on the Call Center's ability to meet customer service expectations; thus, the Attendance Guidelines were strictly enforced.  According to Murray, however, many other AT&T employees were not subjected to strictly enforced attendance guidelines.  Murray specifically

---

[1] Murray had previously reported to Arvin in 2006 for six months.

identifies Meredith Weaver and Tabitha Gibson as such employees.

The Attendance Guidelines provide checks on "unscheduled time away" from work.  Pusch Dec., Ex. 1, Cingular Wireless Consumer Customer Services Attendance Guidelines, p. 1-2.  The Guidelines expressly provide that certain types of absences, including approved leaves of absences, scheduled vacations, short term disability, and FMLA leave, among others, are not counted as "unscheduled time away."  Id., p. 1.  The Guidelines characterize all other time away from a scheduled shift to be "unscheduled time away."  Id., p. 2.  Under the Guidelines, "unscheduled time away" is not an entitlement, but is intended to be used for illness or emergencies.  Id.  AT&T tracked employees' unscheduled absences using a point system.  An employee would receive ¼ point for an unscheduled absence lasting five to thirty minutes, ½ point for an unscheduled absence lasting thirty-one to 120 minutes, and one point for an unscheduled absence lasting 121 minutes to a full shift.  According to the Guidelines, points accrued based on a rolling twelve month calendar.  The Guidelines expressly provide as follows: "Any unscheduled time away from your scheduled shift equaling 12 points or more in a 12-month period, regardless of reason, will be considered unacceptable absenteeism and may result in termination,

4

unless due to extraordinary circumstances as determined by the Company in its sole discretion." <u>Id</u>. Murray concedes that she was given a copy of the Attendance Guidelines and was aware that an accumulation of twelve points could result in the termination of her employment. <u>Defendant's Motion for Summary Judgment</u>, p. 5, Undisputed Material Fact No. 12; <u>Plaintiff's Response to Defendant's Motion for Summary Judgment (d/e 59)</u>, p. 7.

AT&T has presented an Affidavit from Call Center Absences Manager Gaye Ann Pusch, which states that, if an employee is absent for a continuous length of time, the twelve month period is extended by the length of the absence. <u>Pusch Dec.</u>, ¶ 5. Pusch offers the following example: "if an employee is absent for 60 continuous days out of the twelve month period, the twelve month period will be extended by 60 days." <u>Id</u>. Murray fails to identify any evidence to support a finding that this extension was not AT&T policy, but rather responds by arguing that it is unlawful to deprive an employee using FMLA of the privilege of point expiration after twelve months have elapsed. <u>Plaintiff's Response to Defendant's Motion for Summary Judgment</u>, p. 6.

In 2007, Murray sought intermittent FMLA leave for two separate conditions. In 2007 and 2008, requests for FMLA leave and short term

disability claims by AT&T employees were handled by a third party administrator, Nationwide Better Health.  First, in 2007, Murray sought FMLA leave for a heart condition known as supraventricular tachycardia (SVT).  According to Murray, symptoms of SVT include a sudden rapid heart rate with secondary effects of dizziness, sweating, inability to concentrate, and shortness of breath.  By letter, dated September 10, 2007, Murray was informed that she was granted intermittent FMLA leave from August 27, 2007, through February 22, 2008, at the rate of one to two episodes per week of one day each and one doctor visit per month.  Pusch Dec., Ex. 3.  The letter informed Murray that this leave would be counted toward her FMLA entitlement of twelve weeks within a twelve month period.

In late September 2007, Murray became temporarily unable to work due to SVT.  According to Murray, this was due to stress at work and the need to find proper medication for her condition.  On September 23, 2007, Murray notified Nationwide Better Health that she needed to take a medical leave of absence from September 24, 2007, through October 28, 2007.  At the time she requested this leave, Murray was informed in writing that this absence was one for which Murray would be eligible for short term

disability benefits and that the leave would be counted toward her FMLA entitlement, provided she was eligible for FMLA and short term disability. See Pusch Dec., Ex. 5.  Murray ultimately received short term disability benefits from September 24, 2007, until October 21, 2007.

Murray returned to work on October 22, 2007.  From October 22, 2007, until December 17, 2007, Murray was on a transitional return to work schedule under which she only worked twenty-four hours a week, rather than her usual forty hours.  According to AT&T, during this time Murray was allowed to use intermittent FMLA leave to reduce the number of hours worked per week, and this time was counted against Murray's FMLA allotment.  AT&T asserts that Murray was notified in writing that these hours would be counted against her FMLA allotment.  In support of this assertion, AT&T points to the Pusch Declaration and a letter, dated October 22, 2007, that is labeled Ex. 7 to the Pusch Declaration.  See Pusch Dec., ¶ 22 & Ex. 7.

According to Murray, the October 22, 2007, letter is fraudulent. Plaintiff's Response to Defendant's Motion for Summary Judgment, p. 9-10. Murray asserts that when she returned to work on October 22, 2007, the part-time schedule was an accommodation under the Americans with

Disabilities Act.  Murray contends that she was never told that her part-time schedule would count toward her FMLA allotment.  It is undisputed that Murray returned to full time work on December 17, 2007, and continued to use her previously approved intermittent FMLA leave on an as needed basis.

From November 6, 2007, to January 28, 2008, Murray reported her FMLA usage to the acting Call Center Absences Manager David Simmons. Murray did not utilize the toll free phone number or computerized leave tracking system that was usually required.  According to Murray, this was due to "issues" with the disability tracker.  <u>Plaintiff's Response to Defendant's Motion for Summary Judgment</u>, p. 10.  According to AT&T, an employee on intermittent FMLA leave is also required to inform both his or her immediate supervisor and "Work Force" when he or she is going to be absent.  Work Force is the group within AT&T that is responsible for scheduling employees and ensuring that the Call Center is adequately staffed. AT&T contends that Murray was not consistently reporting her absences during this time to her manager or to Work Force.  Murray disputes this assertion by noting that if she failed to call Work Force, her attendance record should reflect No Call/No Shows, which she contends it

8

does not.

Sometime in January 2008, Murray told her Manager Candee Arvin that she was having problems with her hands, wrists, and forearms, a condition that Murray believed to be work-related. Murray had not seen a doctor about these problems at that point. On January 29, 2008, Murray emailed Simmons to seek clarification relating to FMLA leave. Defendant's Motion for Summary Judgment, Ex. A, Deposition of Sharon Murray (Murray Dep.), p. 168 & Ex. D. Murray asked whether an individual with two different qualifying serious health conditions would be entitled to take 480 hours of FMLA leave for each condition. Simmons replied, "No." Defendant's Motion for Summary Judgment, Ex. D, p. 1. In a subsequent email, Simmons explained that short term disability leave also counted against an employee's FMLA allotment. Murray eventually replied by email as follows: "Ok well if std counted as my 480 im srewed this will be not good u know we gotta talk." Defendant's Motion for Summary Judgment, Ex. E. According to Murray, Simmons advised her to seek an ADA accommodation because she was not going to have enough FMLA time to cover her alleged work-related injuries. Murray contends that she informed Arvin of Simmons' advice and Arvin agreed with it. Simmons informed

Murray that she was going to need to submit medical information and would also need to see a doctor for the company.  Murray believed that AT&T would arrange the doctor's appointment for her.

Pusch states that, when she returned to work on January 28, 2008, she learned that, because Murray had been reporting her absences to Simmons rather than utilizing the toll free phone number or computerized leave tracking system, Nationwide Better Health had not been notified of many of Murray's FMLA related absences.  As a result, no notices had been generated by Nationwide Better Health as to Murray's leave requests. Pusch asserts that, upon her return to work, she manually entered Murray's leave requests into the system after piecing together information from Simmons, Work Force, and Murray herself.

Murray asserts that, in late January 2008, she suffered increasing harassment by Arvin, which caused her SVT attacks to increase.  According to Murray, Arvin yelled at her, called her names, and told her that the other representatives on the team did not like her.  Murray complained to her Union representative about Arvin's behavior, but feared that she would be subjected to increased harassment and retaliation when she learned that the Union representative had spoken to Area Manager Woodfall about the

situation.  Murray testified that she had previously reported to Arvin for six months, beginning in January 2006, and had experienced problems with her. Murray concedes that these problems with Arvin began prior to the time Murray was diagnosed with SVT.  In light of this history, when Murray returned from FMLA leave in November 2007, she asked Human Resources Manager April Cook to help her get assigned to a team other than Arvin's. Cook was unable to accommodate this request, but told Murray that, if any problems came up, management would address them on a case-by-case basis.

Murray concedes that, as of January 29, 2008, she understood that AT&T was taking the position that the time during which Murray did not work a full schedule from October through December 2007, would be counted against her for FMLA purposes.  Murray Dep., p. 174.  In a written notice, dated February 1, 2008, Nationwide Better Health informed Murray that the leave she took on January 28, 2008, was not qualified for FMLA protection.  Pusch Dec., Ex. 6.  Murray concedes that, by February 8, 2008, she knew that AT&T was taking the position that she had exhausted her FMLA allotment.  Murray Dep., p. 225.  Murray informed AT&T that she disagreed with its calculation of her FMLA leave and believed that she still had time available.  She continued to submit FMLA requests for time away

from work in February 2008.

Beginning on February 4, 2008, Murray was assigned to a team managed by Phares. According to Murray, she had prior experience with Phares, because Phares would fill in for Arvin on occasion. Murray believes that Phares treated Murray inappropriately on several occasions when she filled in for Arvin. After being assigned to Phares' team, Murray informed Phares about her heart condition via email. According to AT&T, Phares had previously suffered from the same condition which had been corrected by surgery. Defendant's Motion for Summary Judgment, Ex. G, Declaration of Susan Phares (Phares Dec.), ¶ 4. Phares avers that she asked Murray to let her know when she was suffering from the heart condition and she would help her. Id. Phares also states that she told Murray that she "had no problem with her taking the necessary breaks for her heart condition." Id. However, without providing details, Murray asserts that she was not allowed to tend to her heart condition. Phares states that she understood that, while Murray was experiencing an SVT episode, it was best for her to be isolated so that she could get her heart rate down. According to Phares, "Murray agreed to keep [Phares] informed of her need for a break for this reason." Id. Phares avers that, when she noticed Murray was away from her

workstation, Phares would look for her to make sure she was not in need of assistance.  Phares states that, on several occasions, she found Murray in the lobby, speaking with other employees, talking on her personal cell phone, and doing other things that were not related either to work or to her medical condition.  Id., ¶ 6.

According to Phares, on February 21, 2008, Murray's name showed up on a "missing in action" report, which revealed that Murray had logged out on break at 7:45 a.m. with the rest of the team, but had failed to return to work at 8:00 a.m. as scheduled.  Phares Dec., ¶ 8.  Phares went to look for Murray at approximately 8:20 a.m.  She ran into April Cook, who told Phares that she had seen Murray on the phone in the lunchroom.  Phares went to the lunchroom and found Murray talking on her personal cell phone.  Phares told Murray that she needed her to get off the phone and start taking Call Center calls.  Murray was talking to Kimberly White of Sedgwick CMS, AT&T's third party administrator for workers' compensation claims.  When Murray informed White that her manager wanted her off the phone, White asked to speak to Phares.  Murray handed the phone to Phares.  White informed Phares that she would need about fifteen additional minutes to complete her interview of Murray.  Phares

responded that this was fine.  According to Phares, she then handed the phone back to Murray.  According to Murray, Phares shoved the phone in Murray's hand so forcefully that it pushed Murray's hand back.  <u>Murray Dep.</u>, p. 122.  Murray states that the phone then slipped out of her hand and hit the table.  Murray testified that she was crying after this incident, but was able to complete the interview with White.

Later on February 21, 2008, Murray, Pusch, and Phares met to discuss Murray's attendance.  Pusch told Murray that she did not have any FMLA time remaining and that if she were to call in attempting to use FMLA leave, her requests would be denied.  Murray advised Pusch and Phares that they were wrong about her FMLA time, and she threatened to file a complaint with the Department of Labor if the company failed to recredit FMLA time that she believed was improperly taken from her.  Pusch also told Murray that she had not been approved for intermittent FMLA leave for the condition involving her hands, wrists, and forearms.  Murray characterized this condition as a workers' compensation injury, although, at this point, her workers' compensation claim had not been approved by AT&T's third party administrator Sedgwick.  Pusch told Murray that absences that Murray claimed resulted from her work related injury would be identified on

Murray's attendance history by a "WC" notation.  Pusch stated that, if these absences ultimately became excused, they could go back and designate them as such.  Murray concedes that Sedgwick did not approve any claim for workers' compensation benefits for Murray during her employment, but asserts that her claim was approved after her termination.

On or about February 26, 2008, Area Manager Woodfall reviewed Murray's attendance history and observed that she had accumulated 17.5 points under the Guidelines.  Defendant's Motion for Summary Judgment, Ex. K, Declaration of Michael Woodfall (Woodfall Dec.), ¶ 5.  Woodfall also noted several additional recent absences for which Murray had requested FMLA leave that were going to be denied due to her exhaustion of FMLA time.  Woodfall consulted with his supervisor, Nancy Wells, Director of the Springfield Call Center, and decided to process Murray for possible termination.  Pusch then began verification to confirm that Murray was properly subject to termination.

On or about February 11, 2008, Murray asked Human Resources Manager April Cook for the paperwork necessary to request an ADA accommodation.  Cook gave Murray an ADA Medical Evaluation Package and asked that Murray return the completed forms within two weeks.  As

the packet directed, Murray submitted the completed forms to Darlene Webster.  Webster avers that she received Murray's ADA accommodation request on February 29, 2008, while Murray asserts that the paperwork was received by Webster on February 25, 2008.  Webster states that, at the time she received Murray's request, she was aware that termination proceedings had  been initiated for Murray.  According to Webster, it usually takes ten days to process ADA paperwork; however, she reviewed Murray's request faster, due to the pending termination.

Murray submitted a medical evaluation form, completed by Dr. James Rollet, which identified two relevant medical conditions – SVT and bilateral carpal tunnel syndrome.  Defendant's Motion for Summary Judgment, Ex. H.  According to Dr. Rollet, Murray was significantly limited in breathing during an attack and experienced shortness of breath.  Id., p. 4.  Dr. Rollet also noted significant limitations in Murray's ability to perform manual tasks if unable to focus due to an SVT episode.  Id.  Dr. Rollet further reported that Murray was significantly limited in her ability to type due to numbness and tingling.  Id.  Dr. Rollet stated his opinion that more frequent breaks during a work shift would help both conditions, although he recognized that the SVT was unpredictable.  Id., p. 5.  In addition to the

medical information, Murray submitted a typed request for accommodations in which she requested the following: breaking her lunch hour into shorter increments to allow more frequent time for relief and to be allowed to use vacation time to go to doctor appointments even if the day was already closed for additional leave under the CBA.  Id., p. 9.

After reviewing the information submitted by Murray, Webster denied Murray's request for an ADA accommodation.  In doing so, Webster determined that Murray's doctor had failed to "indicate why Murray needed the accommodation of breaks every 15 minutes."  Defendant's Motion for Summary Judgment, Ex. I, Declaration of Darlene Webster, ¶ 5.  Webster also noted that the request for frequent breaks was inconsistent with the CBA, which required the Company to give Murray a full hour for lunch. Webster stated that Murray's request to use vacation time for doctor's appointments was not feasible, and the CBA would not allow an employee to use vacation time ahead of an employee with greater seniority.  Webster informed Pusch that the accommodation request was denied and that the accommodation request did not have any impact on the termination decision.

On March 3, 2008, Pusch began processing Murray for termination.

Pusch avers that, pursuant to standard company practice, she completed a form known as an "Attendance Only Term Verification Request," which listed the absences that constituted the basis for Murray's termination. According to Pusch, the record contains an accurate copy of this document. Pusch Dec., ¶ 32 & Ex. 8.  The Verification Request listed the following dates as Murray's unapproved absences: 1/17, 1/21, 2/5, 2/6, 2/7, 2/12, 2/15, 2/18, and 2/19/2008.  Pusch Dec., Ex. 8, p. 1.  Pusch forwarded the Verification Request to Nationwide Better Health for verification of whether the listed absences had been subject to an approved leave.  On or about March 6, 2008, Pusch received a response from Nationwide Better Health, verifying that Murray was not eligible for FMLA leave for 1/17, 1/21, 2/5, 2/7, 2/12, 2/15, 2/18, and 2/19/2008 because she had exhausted her FMLA allotment.  Pusch Dec., ¶ 33 & Ex. 8, p. 2.  Nationwide failed to address 2/6/2008 in its verification section; however, it did note that Murray was informed of the denial for FMLA protection for absences on 1/21, 2/5, 2/6, and 2/7/2008 in a letter dated February 13, 2008.  Pusch Dec., Ex. 8, p. 2-3.

Pusch also forwarded the Verification Request to AT&T's Return to Work Team, for verification as to whether Murray was entitled to an accommodation that would impact the termination decision.  Pusch Dec.,

¶ 34 & Ex. 8, p. 4.  Pusch avers that she received a response from Darlene Webster on or about March 7, 2008, which verified the denial of Murray's request for an accommodation, noting that the medical evidence did not support the need for a fifteen minute break every hour and that the CBA would not allow Murray to use vacation time over a more senior employee. Pusch Dec., Ex. 8, p. 4.

According to Pusch, while she was seeking the required verifications, Murray's actual attendance record was constantly changing because Murray continued to submit requests for intermittent FMLA leave.  Pusch Dec., ¶ 38.  Pusch avers that, at the time she received the completed Verification Request, Murray had incurred as many as 21.5 attendance points and there were additional absences that were pending FMLA requests that were going to be denied due to the exhaustion of Murray's FMLA allotment.  Id.  On March 7, 2008, Senior Area Manager Amy Neal provided Murray with a copy of her attendance history as of March 7, 2008.  Murray Dep., p. 213; Defendant's Motion for Summary Judgment, Ex. L.  The report showed 21.75 active points, but Neal cautioned Murray that there were dates pending review that might cause this number to change.  On March 10, 2008, Phares provided Murray with an updated attendance history.  Murray

<u>Dep.</u>, p. 216; <u>Defendant's Motion for Summary Judgment</u>, Ex. M.

Murray emailed Pusch at 8:27 p.m. on March 10, 2008, with corrections to the attendance history.  <u>Murray Dep.</u>, p. 216; <u>Defendant's Motion for Summary Judgment</u>, Ex. N.  Murray testified that she sent these comments to Pusch, rather than Phares, because Phares was harassing her and had "no motive of doing the right thing or honestly resolving any issues or even working with [Murray]." <u>Murray Dep.</u>, p. 217.  Pusch forwarded Murray's email to Phares, who then responded via email.  <u>Murray Dep.</u>, p. 217; <u>Defendant's Motion for Summary Judgment</u>, Ex. N.  In addition to addressing Murray's comments, Phares expressed concern that Murray continued to pursue attendance issues with others, after agreeing to raise them with Phares, Murray's direct supervisor, first.

On March 18, 2008, Woodfall approved Murray's termination. According to Woodfall, "[t]he sole reason for [Murray's] termination was that she had incurred more than 12 attendance points in violation of the Company's Attendance Guidelines." <u>Woodfall Dec.</u>, ¶ 7.  Woodfall avers that, at the time of her termination, AT&T records indicated that Murray had accumulated 23.25 points.  Woodfall informed Murray of her termination in person, in a meeting that included Woodfall, Murray,

Murray's Union representative, and another member of management. Murray testified that she attempted to reason with Woodfall and begged him to look at her evidence regarding attendance, but that he refused, stating that he had already fully reviewed the matter. <u>Murray Dep.</u>, p. 229. Murray insisted to Woodfall that the company's information was not correct, and he showed her the attendance record that showed 23.5 active points.

After Murray's termination, Cook contacted Pusch, stating Murray had contacted her claiming that the FMLA calculation for the time that Murray was on a transitional return to work schedule from October 22, 2007, until December 17, 2007, was incorrect. Pusch avers that she undertook further review of the matter and determined that Nationwide Better Health had inaccurately counted this entire period against Murray's FMLA allotment at a rate of forty hours a week, rather than counting only the hours that Murray did not work during the period. According to Pusch, she then worked with Nationwide Better Health to correct the calculation of Murray's FMLA usage. Pusch determined that, under the transitional work arrangement, Murray was absent sixteen hours per week during the period from October 22, 2007, to December 17, 2007, for a total of 128

21

hours.  Pusch further determined that Murray sought and received FMLA protection for an additional 42 hours and eleven minutes during this time period.

Thus, according to Pusch, the correct total of FMLA leave that Murray accumulated during this period was 170 hours and eleven minutes.  Pusch avers that, following the recalculation, some of the full and partial day absences that had previously been characterized as unexcused were now entitled to FMLA protection.  Pusch determined that 4.5 of Murray's attendance points were erroneously assessed and removed them from Murray's attendance history.  After this reduction, Murray had 18.5 active attendance points.  Because the amount still exceeded the 12 points necessary to justify termination under the Attendance Guidelines, AT&T decided that the miscalculation did not warrant overturning Murray's termination.  A Union representative provided Murray with an updated copy of her attendance history, dated April 17, 2008, which reflected the 4.5 point reduction.  Murray attached a copy of the April 17, 2008, attendance history to her Complaint, and she concedes that this report accurately reflects dates on which she was absent from work.  <u>Complaint</u>, p. 6-7; <u>Defendant's Motion for Summary Judgment</u>, p. 27, Undisputed

Material Fact No. 99; <u>Plaintiff's Response to Defendant's Motion for Summary Judgment</u>, p. 24 (conceding, but deeming immaterial, Defendant's Undisputed Material Fact No. 99).  Murray, however, believes that some of the absences reflected on the April 17, 2008, attendance history should not have resulted in points under the Attendance Guidelines and others should have fallen off under the AT&T point expiration policy.

On April 29, 2008, an Independent Medical Evaluation was conducted in connection with Murray's workers' compensation claim.  Dr. Brown diagnosed Murray as suffering from bilateral carpal tunnel syndrome and Wartenberg's Syndrome in her left forearm.  According to Murray, Dr. Brown stated that he did not want her to work and restricted her from work beginning April 29, 2008, because of the problems with her hands and arms. <u>Murray Dep.</u>, p. 236.  Murray began receiving workers' compensation benefits from April 29, 2008, forward.  Murray testified that she has had surgery for the carpal tunnel syndrome, but that her doctor has not given her an estimate of when she should be physically able to resume the job duties of a customer service representative.  <u>Id.</u>, p. 234.

<u>ANALYSIS</u>

Murray's pro se Complaint alleges violations of the FMLA and the ADA, as well as claims of interference with a workers' compensation claim, harassment, and retaliation.  While discovery was proceeding, Murray filed the pending pro se Motion for Summary Judgment and accompanying Motion for Awards.  The Court extended AT&T's response time to allow for the completion of additional discovery.  <u>Text Order, dated November 14, 2008</u>.  AT&T subsequently filed its pending Motion for Summary Judgment.  After briefing was completed on the summary judgment motions, Murray filed the Motion for Protection Order and Motion for Sanctions, both of which contain arguments in support of her request for summary judgment in addition to the specific relief sought.  Given Murray's pro se status and the fact that AT&T has had the opportunity to respond, the Court will consider all of Murray's arguments, regardless of the motion in which they were raised.

I.    <u>MOTION FOR PROTECTION ORDER</u>

In it prayer for relief, Murray's Motion for Protection Order asks the Court (1) to order "complete, clear, and prompt communication in a peaceful and productive manner between all involved," (2) to enter an order

protecting Murray and her family from further retaliation, discrimination, and harassment by AT&T or third-party administrator Sedgwick; and (3) to order that defense counsel communicate with AT&T Human Resource employee Chip Meyers regarding this case rather than employees of the Springfield Call Center.  <u>Motion for Protection Order</u>, p. 7.[2]  Murray fails to establish that she is entitled to any of the relief requested.  There is no evidence of any failure of communication with respect to the issues in the instant case.  The record suggests that Murray has unsuccessfully attempted to discuss matters relating to her workers' compensation benefits with defense counsel.  However, it is undisputed that Murray is represented by counsel on her workers' compensation claim.  Thus, defense counsel's refusal to discuss those issues with Murray in this case has not been shown to be improper.  Similarly, there is no evidence of any on-going retaliation, discrimination, or harassment by AT&T or Sedgwick for this Court to enjoin.  Finally, the Court lacks authority to direct defense counsel's communication with Defendant's employees.  Therefore, the Motion for Protection Order is denied.

------

[2]The majority of the body of the Motion is devoted to the argument that AT&T should rehire Murray with ADA accommodations.  The Court will consider these arguments in its analysis of Murray's ADA claims.

II.   <u>MOTION FOR SANCTIONS</u>

In her Motion for Sanctions, Murray asserts that declarations by Pusch, Webster, Woodfall, and Phares submitted in support of AT&T's Motion for Summary Judgment contain false statements.  The majority of exhibits to the Motion for Sanctions include documents relating to another AT&T employee, Maylena Thornton, who was offered ADA accommodations by AT&T; however, Exhibit 8 is a copy of an email communication relating to the issue of expiration of Murray's attendance points.  According to Murray, the exhibits prove that the Declarations are false in several respects, including statements as to the viability of granting the accommodations requested by Murray in February 2008.  Murray asks the Court to sanction AT&T for this perjury and to award her damages for emotional distress that she suffered as a result of the allegedly false statements.

As an initial matter, the Court notes that the unauthenticated exhibits submitted by Murray do not constitute admissible evidence.  Because Murray fails to present any admissible evidence of perjury, her Motion for Sanctions must be denied.  Additionally, even if the Court were to consider the exhibits, Murray fails to establish any perjury by Pusch, Webster,

Woodfall, or Phares.  Murray contends that Pusch, Webster, Woodfall, and Phares lied about the viability of splitting her lunch shift into shorter increments to allow more frequent breaks.   However, the documents submitted by Murray reveal that AT&T suggested that Thornton divide her two fifteen-minute breaks into six five-minute ones to accommodate for her medical need for short breaks from prolonged computer use.  <u>Motion for Sanctions</u>, Ex. 3, p. 5.  There is nothing to suggest that Thornton was allowed to break up her lunch hour.  Murray further asserts that Pusch, Webster, Woodfall, and Phares lied about the viability of allowing her to use vacation time for medical reasons on days that were closed for additional leave under the CBA.   Again, nothing in the information submitted by Murray establishes that Thornton was allowed to use vacation time for medical reasons on days that were closed for additional leave. Murray's Motion for Sanctions is denied.

III.   <u>SUMMARY JUDGMENT</u>

Murray asserts that she is entitled to summary judgment on all of her claims.  AT&T seeks summary judgment in its favor on each of Murray's claims.   Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact and that judgment as a matter of law is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  When a properly supported motion for summary judgment has been made, the party opposing summary judgment may not merely rest on the pleadings but must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).  "A party must present more than mere speculation or conjecture to defeat a summary judgment motion." Liu v. T & H Machine, Inc., 191 F.3d 790, 796 (7th Cir. 1999).  The Court must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.  See Anderson, 477 U.S. at 255.  The Court addresses each of Murray's claims under this standard.

A.    FMLA Claims

Murray raises two separate FMLA claims -- one of FMLA interference

and one of retaliation.  Murray claims that AT&T improperly interfered with her rights under the FMLA by miscalculating her FMLA usage and improperly retaliated against her for using FMLA leave.  Under the FMLA, an employee who is afflicted with "a serious health condition" which renders him/her unable to perform his/her job is entitled to take twelve weeks of leave during any twelve-month period. 29 U.S.C. § 2612(a)(1)(D).  The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" therein. 29 U.S.C. § 2615(a)(1).  "The FMLA also forbids employers from retaliating against employees who claim benefits under the act."  <u>Smith v. Hope School</u>, 560 F.3d 694, 699 (7th Cir. 2009) (<u>citing</u> 29 U.S.C. § 2615(a)-(b)).

The Court turns first to the question of FMLA interference.  To prevail on her FMLA interference claim, Murray "must demonstrate that: (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her benefits to which she was entitled."  <u>Smith</u>, 560 F.3d at 699.  Murray's position required a forty-hour work week; thus, at most she would be entitled to 480 hours of leave in any twelve-month period under the FMLA.  According to

Murray, AT&T "stole" her FMLA time by counting the hours by which she worked less than a full schedule during her transitional return to work from October 22, 2007, through December 16, 2007, against her FMLA allotment and by incorrectly deducting forty hours per week from her FMLA allotment for this time period. Murray also argues that AT&T erroneously failed to characterize four hours of leave on December 28, 2007, as FMLA protected leave and failed to excuse absences related to her workers' compensation injury. Finally, Murray asserts that AT&T unlawfully denied her the privilege of attendance point expiration. As set forth below, each of these arguments is unpersuasive.

The Court turns first to the period from October 22, 2007, through December 16, 2007. Murray asserts that the entire 192 hours originally assessed for this period should be excluded from her FMLA calculation because her transitional part-time schedule constituted an ADA accommodation. Murray, however, fails to identify any evidence to support a finding that she sought or obtained ADA protection for the transitional return to work schedule. Moreover, the record evidence reveals that Nationwide Better Health notified Murray in writing on October 22, 2007, that this time would be counted against her FMLA allotment. Pusch Dec.,

¶ 22 & Ex. 7.   Murray argues that the written acknowledgment is fraudulent, but she presents no evidence to support her argument.  AT&T responds by providing an Affidavit from a Nationwide Better Health employee authenticating the October 22, 2007, letter.  <u>Defendant's Reply Memorandum in Support of Its Motion for Summary Judgment (d/e 61)</u>, Ex. Q, <u>Declaration of Cynthia Northrup</u>, ¶ 7-8.  Considering this evidence, the record contains no basis for excluding the entire 192 hours from Murray's FMLA calculation.

Murray next contends that AT&T incorrectly deducted forty hours per week from her FMLA allotment for the period during which she was working part-time from October 22, 2007, until she returned to work full-time on December 17, 2007.  The record supports this assertion.  It is undisputed that, at the time AT&T made the decision to terminate Murray's employment, Murray's FMLA usage had been incorrectly calculated to be 192 hours for the transitional period.  AT&T, however, has presented uncontradicted evidence that Murray was absent from work sixteen hours a week during this period of time under her transitional schedule and that she missed another 42 hours and eleven minutes of time that AT&T excused under FMLA.  <u>Pusch Dec.</u>, ¶ 42.  Thus, the record

reveals that Murray was absent from work 170 hours and eleven minutes from October 22, 2007, until she returned to work full-time on December 17, 2007.  This is a difference of 21 hours and 49 minutes from the 192 hours that had been charged.  The difference, however, does not save Murray's claim because, in any event, Murray was allowed 480 hours of FMLA leave prior to her termination.  As previously noted, Murray continued to miss work, invoking FMLA, after she had been notified that she had exhausted her 480 hours.  See Complaint, p. 6-7.  Thus, the 21 hour and 49 minute difference was exhausted prior to Murray's termination.

Murray further asserts that AT&T erroneously failed to characterize four hours of leave on December 28, 2007, as FMLA protected leave. Murray was absent eight hours on December 28, 2007.  AT&T counted four of these hours as FMLA protected, but assessed an attendance point for the other four, characterizing 240 minutes as No Call/No Show.  Complaint, p. 6.  Murray believed that she had been granted FMLA protection for the entire day and, as a result, should not have received the attendance point. Murray Dep., p. 61-63.  Even assuming Murray's version of the facts to be true, Murray cannot establish FMLA interference.  Murray continued to miss work, invoking FMLA, after she had been notified that she had

exhausted her 480 hours.  Thus, had AT&T characterized the additional four hour absence on December 28, 2007, as FMLA leave, Murray would have exhausted her 480-hour allotment four hours sooner.  Murray then would have received the attendance point for time taken after the expiration of her FMLA time.

Murray also argues that AT&T erred in failing to excuse absences related to her workers' compensation injury.  Motion for Protection Order, p. 3.  However, workers' compensation absences may be counted against an employee's FMLA allotment.  Dotson v. BRP U.S. Inc., 520 F.3d 703, 708-09 (7th Cir. 2008).  As set forth above, the undisputed evidence reveals that Murray exhausted her 480-hour FMLA allotment prior to the termination of her employment.  It is also undisputed that Murray's workers' compensation claim was not approved until after her termination.  Thus, any failure by AT&T to excuse absences relating to the workers' compensation injury would not deny Murray benefits to which she was entitled under the FMLA and cannot serve as the basis for an FMLA interference claim.

Murray's argument regarding attendance point expiration is similarly unavailing.  According to Murray, three total attendance points that were

assessed for absences on February 21, March 10, and March 17, 2007, should not have been included in calculating her active attendance points. See Complaint, p. 7. The record reveals that Woodfall approved Murray's termination on March 18, 2008. Woodfall Dec., ¶ 7. The AT&T Attendance Guidelines provide that unscheduled time away equaling twelve or more points in a twelve month period may result in termination. Pusch Dec., Ex. 1, Cingular Wireless Consumer Customer Services Attendance Guidelines, p. 2. Thus, points older than twelve months are generally not included in the calculation and are deemed "expired." However, AT&T has produced uncontradicted evidence that, if an employee is absent for a continuous length of time, the twelve month period is extended by the length of the absence. Pusch Dec., ¶ 5. It is undisputed that Murray was continually absent from September 24, 2007, until October 21, 2007. Based on this continual absence, the expiration dates of the points assessed on February 21, March 10, and March 17, 2007, were extended to March 20, April 6, and April 13, 2008, respectively, and the points were considered in Woodfall's decision to terminate Murray's employment. Murray fails to identify any basis under the FMLA that would prohibit AT&T from extending attendance points in this manner. There is nothing to indicate

34

that AT&T's practice of point extension applies only in FMLA cases; Pusch states that the extension applies when an employee is absent for a continuous length of time, without specifying the basis for the leave. Additionally, even without these three challenged points, Murray would have accumulated 15.5 points as of March 18, 2008, more than the threshold for termination. Thus, AT&T is entitled to summary judgment on Murray's FMLA interference claims. The Court turns its attention to the allegations of retaliation.

A plaintiff claiming FMLA retaliation can proceed under either a direct or indirect method of proof. Daugherty v. Wabash Center, Inc., 2009 WL 2477640, at *3 (7th Cir. Aug. 14, 2009). Under the direct method, Murray must present evidence of a statutorily protected activity, a materially adverse action taken by her employer, and a causal connection between the two. Id. Murray alleges that she was fired in retaliation for using FMLA leave. The record evidence reveals that Murray availed herself of FMLA benefits and that her employment was subsequently terminated. Murray, however, fails to identify evidence sufficient to create an issue of fact on the question of causation. Murray "can prevail under the direct method by showing an admission of discrimination or by constructing a convincing

mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." Id. (internal quotations and citations omitted). Murray can do neither. The record is devoid of any admission of discrimination. Similarly, Murray fails to identify circumstantial evidence from which a jury could infer intentional discrimination. AT&T has presented undisputed evidence that Woodfall terminated Murray's employment because she had accumulated twelve or more attendance points. Murray was aware that AT&T believed she had exhausted her FMLA allotment, yet she continued to miss work invoking FMLA, because she disagreed with the Company's calculation of her time. As set forth in detail above, Murray's FMLA usage was in fact miscalculated, which resulted in an inflated number of attendance points on her attendance history. However, even after the error was corrected, 18.5 active points remained, and Murray concedes that she was absent from work on the dates set out in the corrected attendance history, dated April 17, 2008. There is no evidence to support a finding that AT&T fired Murray to punish her for exercising her FMLA rights.

The indirect method requires Murray to produce evidence that she was treated differently from similarly situated employees who did not request

FMLA leave, even though she was performing her job satisfactorily.  See Smith, 560 F.3d at 702.  If Murray does so, the burden shifts to AT&T  to articulate a legitimate and non-retaliatory reason for its decision.  If AT&T states such a reason, the burden then shifts back to Murray to identify evidence that the proffered reason was mere pretext, which permits an inference of illegal motive.  See, e.g., Jenkins v. Ford Motor Co., 2008 WL 5102126, at *3 (S.D. Ind. Dec. 1, 2008).

As noted in connection with Murray's Motion for Sanctions, Murray has presented unauthenticated documents relating to another employee, Maylena Thornton, who Murray believes was treated more favorably than she was.  Even if the Court considers the information relating to Thornton, Murray cannot succeed under the indirect method.  Murray fails to establish that Thornton constitutes a similarly situated employee who did not request FMLA leave; in fact, it appears that Thornton herself used FMLA leave. Furthermore, while Murray asserts that employees Meredith Weaver and Tabitha Gibson were also treated more favorably than she was, she fails to present evidence that either of these women would qualify as a similarly situated employee who did not request FMLA leave.  Therefore, Murray is unable to establish a prima facie case under the indirect method.

Furthermore, even assuming Murray could establish a prima facie case, she fails to identify any evidence that AT&T's proffered reason for her termination, i.e. her excessive accumulation of attendance points, was pretextual.  AT&T is entitled to summary judgment on Murray's claim of FMLA retaliation.

### B.   ADA Claims

Murray claims that AT&T violated her rights under the ADA by failing to grant her an accommodation and by refusing to rehire her with accommodations.  To establish a violation of the ADA, Murray "must show: 1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation."  Winsley v. Cook County, 563 F.3d 598, 603 (7th Cir. 2009) (internal quotations and citation omitted).  The ADA defines a qualified individual as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  In applicable part, the ADA defines disability as "a physical or mental impairment that substantially limits one or more major

life activities of such individual." 42 U.S.C. § 12102(1)(A).

The Court turns first to the failure to accommodate argument. According to AT&T, regular attendance at work was an essential function of Murray's job because unscheduled absences at the Call Center negatively impacted AT&T clients. This belief is stated, in writing in the Attendance Guidelines, which Murray received. <u>Pusch Dec.</u>, Ex. 1. The ADA expressly mandates that consideration be given to an employer's assessment as to which functions of a job are essential. 42 U.S.C. § 12111(8). It is well-established in this Circuit that "[t]he ADA does not require an employer to accommodate an employee who suffers a prolonged illness by allowing [her] an indefinite leave of absence." <u>Nowak v. St. Rita High Sch.</u>, 142 F.3d 999, 1004 (7th Cir. 1998). As set forth above, AT&T allowed Murray to take 480 hours of FMLA leave between August 2007 and January 2008 without penalizing her attendance record. However, Murray continued to accumulate unscheduled absences after her 480 hours had been exhausted. Murray fails to identify evidence to support a finding that she was capable of meeting AT&T's attendance expectations, with or without reasonable accommodation, at the time her employment was terminated. There is no evidence that the frequent breaks requested by Murray in February 2008

would reduce her unscheduled absences. The record reflects that, at the time that Murray was frequently absent from work, she was allowed to take time away from her work station two or three times a day to perform control maneuvers when she experienced an SVT attack. Murray Dep., p. 90-92. Murray's request to be allowed to use vacation time for medical reasons when a day was already closed for additional leave under the CBA was not reasonable because it would interfere with the collectively bargained seniority rights of other employees. See Herr v. City of Chicago, 479 F.Supp.2d 834, 840 (N.D. Ill. 2007). Murray fails to identify any other accommodation that would have allowed her to perform the essential functions of her job. Thus, Murray's failure to accommodate claim fails.

Murray also argues that AT&T should rehire her with accommodations. According to Murray, Dr. Brown, who evaluated her in connection with her workers' compensation claim, verbally requested that Murray be rehired with accommodations "to serve as therapy, treatment and aide in recovery." Motion for Protection Order, p. 4. Murray, however, fails to establish that she could perform the essential functions of her job if she were to be reinstated. The only record evidence on this point comes from Murray's December 2008 deposition, in which she testified that she

40

was not currently able to work as a customer service representative.  AT&T is entitled to summary judgment on Murray's ADA claims.

C.    State Law Claims

As set forth above, AT&T is entitled to summary judgment on Murray's federal claims.  Given this disposition, the Court declines to exercise supplemental jurisdiction over Murray's state law claims. Therefore, the remaining state law claims are dismissed in this Court for lack of jurisdiction.

D.    Murray's Motion for Awards

Given the disposition of her claims, Murray is not entitled to recover monetary damages.  Her Motion for Awards is denied.

CONCLUSION

THEREFORE, for the reasons set forth above, Plaintiff Sharon Murray's Motion for Summary Judgment (d/e 26), accompanying Motion for Awards (d/e 27), Motion for Protection Order (d/e 65), and Motion Seeking Sanctions and Federal Penalty for Perjury Motion for Ruling on the Plaintiff's Motion for Summary Judgment (d/e 67) are DENIED. Defendant AT&T Mobility LLC's Motion for Summary Judgment (d/e 48) is ALLOWED, in part.  Summary judgment is entered in favor of Defendant

AT&T Mobility LLC on Murray's FMLA and ADA claims.  The Court declines to exercise supplemental jurisdiction over Murray's state law claims, and thus, the remaining state law claims are dismissed for lack of jurisdiction.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   September 15, 2009

            FOR THE COURT:


                             s/  Jeanne E. Scott
                        JEANNE E. SCOTT
                        UNITED STATES DISTRICT JUDGE